Date signed September 18, 2015



UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

In re )
 )
THOMAS W. RUSNACK, ) Case No. 14-21283
 ) (Chapter 13)
          Debtor. )

MEMORANDUM DECISION SUSTAINING OBJECTION TO CLAIM

Cardinal Bank, N.A., filed a proof of claim in this case in the amount of $70,804.90.  The debtor filed an objection, later amended, to the claim.  An evidentiary hearing was held on July 14, 2015, at the end of which the objection to claim was taken under advisement.

The dispute centers on charges to a home equity line of credit opened by the debtor and his then wife, Analisa Rusnack, in 2003 -- specifically, two $10,000 charges (totaling $20,000) to that account made by Ms. Rusnack in 2006.  Cardinal Bank included the disputed amount in its proof of claim; the debtor contends these two charges were unauthorized and thus were improperly honored by Cardinal Bank.  The debtor argues that

Cardinal Bank's proof of claim ought not to include the unauthorized charges and any interest charged on those charges. I will sustain the debtor's objection as to the portion of the claim that includes the unauthorized charges and any interest on those charges included in the proof of claim.

I

The debtor and his then wife, Analisa Rusnack, jointly opened a home equity line of credit (called a "HELOC" in the parties' briefs) with Cardinal Bank on August 4, 2003. Charges were made against the credit line by the use of checks similar to those used for a deposit account.

The debtor testified that at some point he and Ms. Rusnack separated and she moved out. After that, by letter dated June 22, 2006, the debtor requested Cardinal Bank to put a freeze on the credit line. (Debtor's Trial Exh. 1.) Cardinal Bank confirmed it had placed a freeze on the account by letter dated the same day, stating, "if you need us to honor an item . . . both of your signatures will be required." (Debtor's Trial Exh. 2.) Despite the account freeze, Cardinal Bank honored two separate $10,000 checks, dated July 26, 2006, and September 8, 2006, respectively, which were signed only by Ms. Rusnack. (Debtor's Trial Exh. 4.) The debtor testified that, upon receiving a monthly statement reflecting these charges, he promptly telephoned Cardinal Bank and complained to a

representative that the charges should not have been honored because the checks had not been signed by both account holders. Cardinal Bank sent a letter to Ms. Rusnack (copying the debtor) on October 2, 2006, stating that "these two checks were inconsistent with the prior notification that no further withdraws were to occur on the account" and demanding repayment from Ms. Rusnack. (Debtor's Trial Exh. 3.) At the hearing, the bank's representative, William C. O'Connor, admitted that the bank made a mistake in honoring the checks.

Ms. Rusnack testified at the hearing that she never received the letter demanding repayment of the two charges. She also testified that she did not recall what she had done with the funds but that she assumes she deposited the funds in her and the debtor's joint bank account and assumes she paid joint bills, but her testimony lacked any suggestion she was sure her assumption was correct. The debtor testified that he did not receive any benefit from the funds. The debtor further testified that, to the best of his recollection, the subsequent divorce and property settlement (which occurred, according to Ms. Rusnack, in 2008) did not specifically address the $20,000 now at issue.

II

The two $10,000 charges were unauthorized and should not have been honored by the bank. Cardinal Bank, at the debtor's request, put a freeze on the credit line that would require any

charge to be signed by both account holders, the debtor and Ms. Rusnack.  Despite this, Cardinal Bank honored two separate $10,000 charges, dated July 26, 2006, and September 8, 2006, respectively, which were only signed by Ms. Rusnack.  Virginia Code § 8.3A-403 states that where the signature of more than one person is required to constitute the signature of an organization (which covers not only commercial entities but also "two or more persons having a joint or common interest" under § 1-201(28) of the Virginia Code), and a required signature is lacking, the signature of the organization is unauthorized.  Because both the debtor's and Ms. Rusnack's signatures were required during the freeze period, the charges signed only by Ms. Rusnack were unauthorized.

    I find that the debtor did not receive any benefit from the $20,000 charges by Ms. Rusnack.  His testimony on this point was specific and credible.  I do not give persuasive weight to Ms. Rusnack's testimony that she assumes she deposited the money into their joint account and assumes she paid joint bills with it.  Cardinal Bank offered no evidence which contradicts the debtor's account.  There is thus no basis for the bank's argument that the debtor's objection should be overruled because the debtor received a benefit from the $20,000.

### III

    Cardinal Bank argues that, even though it admits it made a

mistake by honoring the charges, the debtor is precluded on the basis of untimeliness from disputing the two charges made in 2006.  The bank cites to relevant portions of Virginia Code § 8.4-406 in support of its argument:

> (a) A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment.
>
> [. . .]
>
> (c) If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or **because a purported signature by or on behalf of the customer was not authorized**.  If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer **must promptly notify** the bank of the relevant facts.
>
> [. . .]
>
> (f) Without regard to care or lack of care of either the customer or the bank, a customer who does not **within one year** after the statement or items are made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

(Emphasis added.)

The parties apparently do not dispute that Cardinal Bank sent the debtor a "statement of account" as described in subsection (a) of § 8.4-406.  No monthly account statements were

introduced into evidence by the parties at the hearing, but the debtor testified that he received a monthly statement for the credit line account before he called to complain about the charges.  I will assume without deciding, for purposes of this decision, that Cardinal Bank did send the debtor a "statement of account" as described in subsection (a) of § 8.4-406.  Accordingly, the debtor was required by subsection (c) to "discover and report the customer's unauthorized signature" on any charge within one year after the statement was sent.  As discussed in section II, *supra*, the two checks bore "the customer's unauthorized signature" because only Ms. Rusnack signed the checks when the signatures of both Ms. Rusnack and the debtor were necessary.

Cardinal Bank argues that the debtor failed to comply with the one-year "discover and report" provision.  However, the debtor testified credibly at the hearing that, after he received his monthly statement containing the unauthorized charges, he "promptly" telephoned the bank to report that the two $10,000 charges were unauthorized.  While "promptly" does not denote a specific time period, I find that in this context it certainly occurred within the statutory year period.  Cardinal Bank did not offer evidence to refute the debtor's testimony, except for testimony by Mr. O'Connell that the bank's file did not contain any notation reflecting any telephone complaint by the debtor.

Cardinal Bank's lack of records regarding the debtor's reporting is not persuasive evidence in light of the debtor's specific and credible testimony that he recalled telephoning the bank to complain about the unauthorized charges promptly after receiving the statement.  Moreover, Cardinal Bank's letter of October 2, 2006, to Ms. Rusnack makes evident that it had been made aware within the one-year statute of limitations that the two charges were unauthorized.  At the hearing, Cardinal Bank argued that the debtor failed to complain in writing; however, § 8.4-406 does not require a written complaint.  I find that the debtor complied with the statutory requirements of § 8.4-406 and thus is not precluded by that provision from maintaining his objection.[1]

IV

At the hearing, Cardinal Bank argued that the debtor was required to put his complaint in writing because of a provision appearing at the end of the parties' account agreement, and that

---

[1] Cardinal Bank also argued that the debtor had ratified the unauthorized charges by not reporting the charges as unauthorized and making a subsequent charge (signed by both him and Ms. Rusnack) against the account.  Because I find that the debtor did promptly report the charges, this argument is without merit.

his failure to do so precludes his objection now.[2] However, that provision according to its plain language is merely a notice to the debtor of his rights under the Fair Credit Billing Act, which

---

[2] The provision states in its entirety:

**YOUR BILLING RIGHTS**
**KEEP THIS NOTICE FOR FUTURE USE**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

Your name and account number.
The dollar amount of the suspected error.
Describe the error and explain, if you can, why you believe there is an error.
If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities**
**After We Receive Your Written Notice**
  We must acknowledge your letter within 30 days, unless we have correct the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay finance charges related to any questioned a mount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up the any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does nto satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

is codified as 15 U.S.C. § 1666.  The Fair Credit Bill Act imposes duties on credit providers (such as Cardinal Bank) to investigate and verify charges, and those statutory duties are triggered when the account holder complains about a charge in writing within 60 days of receiving his statement.  Neither the notice provision nor the Act states that the Act is the account holder's exclusive remedy when faced with incorrect charges.  In fact, the Act states explicitly that it does not preempt state law claims except to the extent that law is inconsistent with the Act.  15 U.S.C. § 1666j(a).  *See Purcell v. Universal Bank, N.A.*, No. CIV.A. 01-CV-2678, 2003 WL 1962376, at *4-5 (E.D. Pa. April 28, 2003) ("Seeing no inconsistency between the federal statute and state law negligence claim, we find that there is no preemption.").  In any event, the debtor here has not brought any affirmative claims against Cardinal Bank but merely seeks to defend against a claim brought by the bank.  Certainly, neither the Act nor the contract's notice provision about the Act requires the debtor to perform the Act's triggering duties to avoid waiving any non-Act defense to unauthorized charges.

V

For all the above reasons, I will sustain the debtor's objection to the portion of Cardinal Bank's proof of claim that includes the $20,000 in unauthorized charges and any related interest.  The debtor points to the many payments he has made on

the account over time and opines that when all related interest is deducted the proof of claim may be reduced in its entirety. Neither the debtor nor Cardinal Bank provided a calculation of the precise amount of the related interest included in the proof of claim, however, and thus I will set this matter for a hearing to determine that amount.

An order follows.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of filings;

Jeremy K. Fishman
Axelson, Williamowsky, Bender & Fishman, P.C.
1401 Rockville Pike, Suite 550
Rockville, MD 20852